U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 APR 13 PM 12: 07

CLERK
BY  (hw/
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

THE ESTATE OF GREGORY DAVIS, )
Melissa Davis, Administrator, and )
MELISSA DAVIS, individually, )
                 Plaintiffs, )
     )
v.      )   Civil Case No. 5:22-cv-0123-gwc
     )
SERHAT DANIEL GUMRUKCU, )
WILLIAM ANDERSON WITTEKIND, )
SG & AW HOLDINGS, LLC, and )
GTB HOLDINGS, LLC, )
                 Defendants. )

## AMENDED COMPLAINT
**With Demand for Trial by Jury**

1. Gregory Davis was a resident of Danville, Vermont.

2. Mr. Davis died in Barnet, Vermont on or about January 6, 2018.

3. Melissa Davis is Gregory Davis' widow and a resident of New York.

4. Melissa Davis is the administrator of the Estate of Gregory Davis by virtue of an order of the Vermont Superior Court, Caledonia Probate Division.

5. Serhat Daniel Gumrukcu (Mr. Gumrukcu) is a resident of California and is the spouse of William Anderson Wittekind.

6. Mr. Wittekind is a resident of California and is the spouse of Mr. Gumrukcu.

7. SG & AW Holdings, LLC is a California limited liability company whose sole members are either Mr. Gumrukcu and Mr. Wittekind or only Mr. Wittekind.

8. GTB Holdings, LLC is a California limited liability company whose sole member and manager is SG & AW Holdings, LLC.

Plante &
Hanley, P.C.

## Jurisdiction and Venue

9. Because the parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332 gives the United States District Court subject matter jurisdiction.

10. The District of Vermont is the proper venue, and has personal jurisdiction over the defendants, because Mr. Gumrukcu's acts caused Mr. Davis' death in Vermont and all of the defendants's acts have hindered, delayed and defrauded the Plaintiffs, representing a knowing, intentional and deliberate intervention in Vermont such that it is reasonable for all defendants to be subject to legal proceedings in Vermont. In addition, Mr. Wittekind, SG & AW Holdings, LLC and GTB Holdings, LLC have consented to this Court's exercise of personal jurisdiction over them by moving to intervene in this case and/or seeking relief from this Court.

## The Facts

### The Death of Gregory Davis and Subsequent Investigation

11. At approximately 9 p.m. on January 6, 2018, Melissa Davis and Gregory Davis were in their bedroom in their home in Danville, Vermont.

12. Mr. and Mrs. Davis heard someone knock on the door.

13. Mr. Davis went to the door and spoke with the man at the door.

14. Mr. Davis came back to the bedroom and told Mrs. Davis the man at the door was a U.S. Marshal.

15. Mrs. Davis saw the man. He had handcuffs and a rifle. He was wearing a jacket and a mask, both of which had the emblem of the United States Marshals' Service.

16. The man told Mr. and Mrs. Davis that he had a warrant for the arrest of Mr. Davis for racketeering. He said the warrant instructed him to take Mr. Davis into custody and to bring him to Virginia.

17. A minor child of Mr. and Mrs. Davis saw the man and the car he was driving. The car had red and blue emergency lights activated on its dash.

18. Mr. Davis packed some clothes and went with the man.

19. The next day, January 7, 2018, the Vermont State Police received a report that a body was lying on the side of a road in Barnet, Vermont, about 15 miles from Mr. and Mrs. Davis' home.

20. The Vermont State Police went to the scene and found Mr. Davis' body.

21. Mr. Davis had been shot multiple times in the head and torso while handcuffed.

22. In the years that followed, federal and state law enforcement agencies conducted an exhaustive investigation regarding Mr. Davis' death.

23. Law enforcement officers learned that Mr. Gumrukcu and his brother, Murat Gumrukcu, had been involved in a business transaction with Mr. Davis.

24. The law enforcement officers also learned that shortly before his death, Mr. Davis said that the Gumrukcu brothers had defrauded him and he was going to report their fraud to law enforcement agencies.

25. Federal law enforcement officers interviewed the Gumrukcu brothers.

26. Mr. Gumrukcu and his brother denied any involvement in Mr. Davis' death.

27. Shortly thereafter, Murat Gumrukcu left the United States, never to return.

28. After a lengthy investigation, federal law enforcement officers, utilizing data obtained from cell phone towers and surveillance cameras, determined that the person who

falsely claimed to be a United States Marshal, who took Mr. Davis from his home, and who shot and killed Mr. Davis, was Jerry Banks.

29. Law enforcement officers were unable to find any connection between Mr. Banks and Mr. Davis.

30. Law enforcement officers determined that Mr. Banks' financial situation had significantly improved shortly after the wrongful death of Mr. Davis.

31. Law enforcement officers determined that Mr. Banks had telephoned Aron Lee Ethridge shortly after the wrongful death of Mr. Davis.

32. Law enforcement officers determined that Mr. Banks had multiple meetings with Mr. Ethridge shortly before the wrongful death of Mr. Davis.

33. Law enforcement officers interviewed Mr. Ethridge.

34. Eventually, Mr. Ethridge admitted to these law enforcement officers that he had hired Mr. Banks to kidnap and kill Mr. Davis.

35. Mr. Ethridge disclosed to the same law enforcement officers that Berk Eratay, a friend and former neighbor, had hired him to find a person to murder Mr. Davis.

36. Mr. Ethridge disclosed that Mr. Eratay had paid him more than $110,000 in cash and additional amounts in Bitcoin for the murder of Mr. Davis.

37. Mr. Eratay is an employee and/or business associate of Mr. Gumrukcu.

38. Mr. Gumrukcu gave Mr. Eratay stock in a business organization with which Mr. Gumrukcu is associated.

39. In April 2022, the United States of America filed a criminal complaint against Mr. Banks in the District of Vermont, but that complaint was placed under seal.

40. Later the same month, federal officials arrested Mr. Banks.

41. At approximately the same time, federal officers arrested Mr. Ethridge.

42. On May 19, 2022, a grand jury in the District of Vermont issued an indictment asserting that Mr. Gumrukcu and Mr. Eratay, "together with others, did knowingly and intentionally conspire to cause another to travel in interstate commerce, and to use and cause another to use facilities of interstate commerce, namely cellular telephone networks, with the intent that the murder of Gregory Davis be committed ... as consideration for a promise and agreement to pay something of a pecuniary value and the death of Gregory Davis resulted."

43. The indictment was placed under seal.

44. On May 19, 2022, a clerk of the District of Vermont issued a warrant for the arrest of Mr. Gumrukcu.

45. On May 24, 2022, federal law enforcement officers arrested Mr. Gumrukcu at Los Angeles International Airport, before Mr. Gumrukcu could board a flight.

46. Federal law enforcement officers arrested Mr. Eratay at roughly the same time.

47. The indictment against Mr. Gumrukcu and Mr. Eratay was unsealed in June 2022.

48. Between January 2018 and, at least, May 2022, Mr. Gumrukcu, who was at all times outside of Vermont, wrongfully concealed and made false statements about his central role in the wrongful death of Mr. Davis.

49. Mrs. Davis did not discover, and could not have discovered through the exercise of reasonable diligence, that Mr. Gumrukcu's actions were a proximate cause of the wrongful death of Mr. Davis.

50. The death of Mr. Davis was caused by intentional acts of Mr. Gumrukcu constituting murder.

Transfers Involving SG & AW Holdings, LLC and GTB Holdings, LLC

51. In March 2018, Mr. Gumrukcu and Mr. Wittekind formed SG & AW Holdings, a California limited liability company.

52. SG & AW Holdings asserted in this Court that in 2020, Mr. Gumrukcu withdrew from that company and transferred his membership interests back to the company.

53. SG & AW Holdings filed a January 10, 2020 "Unanimous Consent" of the members of SG & AW Holdings in this Court, which authorized Mr. Gumrukcu's withdrawal and the transfer of his shares back to the company.

54. SG & AW Holdings recently admitted that no one can find an original unanimous consent authorizing Mr. Gumrukcu's withdrawal and transfer of shares back to the company and admitted that in August 2022, Mr. Wittekind applied his electronic signature and the electronic signature of Mr. Gumrukcu to the unanimous consent.

55. Despite these admissions, SG & AW Holdings maintains that in 2020, Mr. Gumrukcu withdrew from the company and transferred all of his membership shares back to the company.

56. Mr. Gumrukcu did not receive consideration for his purported withdrawal and transfer of membership shares to SG & AW Holdings.

57. Upon Mr. Gumrukcu's alleged withdrawal and transfer of membership shares, SG & AW became wholly owned by Mr. Wittekind.

58. On February 25, 2021, SG & AW Holdings bought Mr. Gumrukcu and Mr. Wittekind's residence at 1743 North Curson Avenue, Los Angeles, California, for $5.5 million.

59. The residence at 1743 North Curson Avenue, Los Angeles, California is presently

listed for sale.

60. On November 18, 2021, SG & AW Holdings formed GTB Holdings, LLC. The sole member and manager of GTB Holdings is SG & AW Holdings.

61. On December 21, 2021, GTB Holdings bought a commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard, in Los Angeles, California for $18.45 million, contributing $4.68 million in "borrower funds" towards the purchase.

### Attempted Transfers of Enochian Biosciences Stock Held in Mr. Gumrukcu's and Mr. Wittekind's Joint Account with J. P. Morgan Securities, LLC in New York

62. On September 20, 2018, Mr. Gumrukcu and Mr. Wittekind signed a *Joint Account with Rights of Survivorship Agreement* for a joint brokerage account at J. P. Morgan Securities, LLC (J. P. Morgan) in New York (joint account).

63. The joint account holder is "William Anderson Wittekind & Serhat Gumrukcu as Joint Tenants with Rights of Survivorship and not as Tenants in Common."

64. On May 29, 2020, Weird Science, LLC, a company in which both Mr. Gumrukcu and Mr. Wittekind were or are members, transferred 10.5 million shares in Enochian Biosciences common stock to Mr. Gumrukcu.

65. On or about June 24, 2022, Mr. Wittekind requested in writing that J. P. Morgan deliver Enochian Biosciences stock from the joint account to him.

66. On or about June 24, 2022, J. P. Morgan denied Mr. Wittekind's request.

67. Mr. Wittekind has asserted that on June 29, 2022, he and Mr. Gumrukcu signed a *Property Status Agreement* stating that all of the shares of Enochian Biosciences in the J. P. Morgan joint account are owned exclusively by the spouse whose name appears on the stock certificate.

Plante & Hanley, P.C.

68. On July 11, 2022, four days after this Court issued a *Writ of Attachment* on all of the Enochian Biosciences stock that Mr. Gumrukcu owns, Mr. Wittekind's lawyer requested that J. P. Morgan deliver certificates for 3,615,757 shares of Enochian Biosciences stock to Mr. Wittekind. Much of that stock is held in the joint account.

69. On July 22, 2022, J. P. Morgan denied the lawyer's request to release stock certificates from the joint account, but agreed to release stock certificates from other accounts.

70. On August 9, 2022, Mr. Wittekind sued J. P. Morgan in the Supreme Court of the State of New York, New York County, seeking the release of all stock certificates in the joint account that bear his name.

71. On August 10, 2022, Mr. Wittekind moved for a preliminary injunction or temporary restraining order to require that J. P. Morgan release all stock certificates in the joint account bearing Mr. Wittekind's name.

72. On August 15, 2022, the New York Supreme Court denied Mr. Wittekind's motion and approved a notice to show cause to J. P. Morgan.

73. On August 23, 2022, J. P. Morgan opposed Mr. Wittekind's order to show cause.

74. On August 30, 2022, the New York Supreme Court denied Mr. Wittekind's motion for a temporary restraining order/preliminary injunction.

75. On November 25, 2022, Mr. Wittekind filed an emergency motion to intervene in this case and to clarify the attachment order and filed a proposed order for the Court's signature that states, "all of Mr. Wittekind's paper stock certificates by whomever or however held, including . . . those in J. P. Morgan account number ending in 6024, are not subject to the Court's writ of attachment and should be immediately released to him."

76. On January 3, 2024, Mr. Wittekind filed a memorandum in this Court arguing that the Court should dissolve the writ of attachment on all of the Enochian Biosciences stock that Mr. Gumrukcu owns.

77. On January 3, 2023, Mr. Gumrukcu filed a memorandum in this Court, asserting that he does not have "possession" of his Enochian Biosciences stock certificates because they are held in a brokerage account with J. P. Morgan in New York.

### Transfer of Enochian Biosciences, Inc. Stock

78. On May 18, 2022, shortly before he was arrested for the murder of Mr. Davis, Mr. Gumrukcu sold 253,493 shares of Enochian Biosciences, Inc. stock at $8 per share.

## COUNT I
## WRONGFUL DEATH
## 14 V. S. A. § 1491, *et seq.*
## Estate of Gregory Davis, Plaintiff
## Serhat Gumrukcu, Defendant

79. Mr. Gumrukcu intentionally caused the death of Mr. Davis, constituting murder.

80. As a direct and proximate result of the actions of Mr. Gumrukcu, Mrs. Davis and her minor children have suffered pecuniary loss, Mrs. Davis has been deprived of the love, care, comfort, support, guidance and consortium of her husband and the children of Mr. and Mrs. Davis have been deprived of the love, care, comfort, support and guidance of their father.

## COUNT II
## SURVIVAL
## 14 V. S. A. § 1453
## Estate of Gregory Davis, Plaintiff
## Serhat Gumrukcu, Defendant

81. Mrs. Davis repeats paragraphs 1 through 78.

82. From the time Mr. Banks came to Mr. and Mrs. Davis' home to the time Mr. Banks

Plante & Hanley, P.C.

murdered him, Mr. Davis experienced great emotional distress, pain and suffering.

83. Mr. Gumrukcu's actions were a proximate cause of Mr. Davis' great emotional distress, pain and suffering.

## COUNT III
## LOSS OF CONSORTIUM
**Melissa Davis, Plaintiff**
**Serhat Gumrukcu, Defendant**

84. Mrs. Davis repeats paragraphs 1 through 78.

85. As a direct result of Mr. Gumrukcu's wrongful acts, Melissa Davis lost the care, comfort, love, support, guidance and consortium of her husband, Gregory Davis, and has experienced, and will continue to experience, great emotional distress.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
**Restatement (Second) of Torts § 46**
**Melissa Davis, Plaintiff**
**Serhat Gumrukcu, Defendant**

86. Mrs. Davis repeats paragraphs 1 through 78.

87. Mr. Gumrukcu's actions were outrageous conduct not tolerated in any civilized society.

88. Mr. Gumrukcu intended to cause, or recklessly disregarded the probability of causing, extreme emotional distress to Mrs. Davis.

89. As a direct and proximate result of the actions of Mr. Gumrukcu, Mrs. Davis suffered extreme emotional distress.

Plante &
Hanley, P.C.

## COUNT V
### UNIFORM VOIDABLE TRANSACTIONS ACT
Cal. Civil Code §§ 3439 *et seq.*
Estate of Gregory Davis, Plaintiff,
Melissa Davis, Plaintiff
Serhat Gumrukcu, Defendant
William Anderson Wittekind, Defendant
SG & AW Holdings, LLC, Defendant

90. Mrs. Davis repeats paragraphs 1 - 78.

91. Under the Uniform Voidable Transactions Act (UVTA), Mr. Gumrukcu became the "debtor" of the Plaintiffs, his "creditors," whose "claim" arose no later than January 6, 2018.

92. In 2020, when Mr. Gumrukcu reportedly withdrew from SG & AW Holdings and without consideration, transferred his membership shares back to the company, which became wholly owned by Mr. Wittekind, he "transferred" "assets" to "transferees" who are "insiders" without receiving "reasonably equivalent value."

93. Mr. Gumrukcu's withdrawal from SG & AW Holdings and transfer of membership shares back to the company for no consideration was done with the intent to hinder, delay and/or defraud the Plaintiffs and/or done when he reasonably should have expected to incur debts beyond his ability pay as they came due.

94. Mr. Gumrukcu's withdrawal from SG & AW Holdings and transfer of membership shares back to the company for no consideration has hindered, delayed and/or defrauded the Plaintiffs.

95. The Plaintiffs are entitled to a declaration that Mr. Gumrukcu's withdrawal from SG & AW Holdings and the transfer of his membership shares and other interests back to the company are void.

96. Alternatively, the Plaintiffs are entitled to damages from Mr. Gumrukcu, Mr. Wittekind and SG & AW Holdings for the value of Mr. Gumrukcu's fraudulent transfer of his interest in SG & AW Holdings.

### COUNT VI
### UNIFORM VOIDABLE TRANSACTIONS ACT
### Cal. Civil Code §§ 3439 *et seq.*
### Estate of Gregory Davis, Plaintiff,
### Melissa Davis, Plaintiff
### Serhat Gumrukcu, Defendant
### William Anderson Wittekind, Defendant
### SG & AW Holdings, LLC, Defendant

97. Mrs. Davis repeats paragraphs 1 - 78.

98. SG & AW Holdings is an "asset" of Mr. Gumrukcu, who is a "debtor" of the Plaintiffs, his "creditors," whose "claim" arose no later than January 6, 2018.

99. The Plaintiffs are entitled to an injunction to prevent Mr. Gumrukcu, Mr. Wittekind or SG & AW Holdings from selling or encumbering SG & AW Holdings.

### COUNT VII
### UNIFORM VOIDABLE TRANSACTIONS ACT
### Cal. Civil Code §§ 3439 *et seq.*
### Estate of Gregory Davis, Plaintiff,
### Melissa Davis, Plaintiff
### Serhat Gumrukcu, Defendant
### William Anderson Wittekind, Defendant
### SG & AW Holdings, LLC, Defendant
### GTB Holdings, LLC, Defendant

100. Mrs. Davis repeats paragraphs 1 - 78.

101. SG & AW Holdings owns Mr. Gumrukcu's and Mr. Wittekind's residence at 1743 North Curson Avenue in Los Angeles, California, which is listed for sale.

102. SG & AW Holdings owns GTB Holdings.

103. GTB Holdings owns a commercial building at 4142, 4144, 4146 and 4153 Lankershim

Boulevard, in Los Angeles, California.

104. SG & AW Holdings and GTB Holdings own additional real and personal property.

105. The residence at 1743 North Curson Avenue in Los Angeles, California, GTB Holdings, and the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California, and all other real and personal property owned by SG & AW Holdings and GTB Holdings, are "assets" of Mr. Gumrukcu, who is a "debtor" of the Plaintiffs, his "creditors," whose "claim" arose no later than January 6, 2018.

106. The Plaintiffs are entitled to an injunction to prevent all Defendants from selling or encumbering any real or personal property owned by SG & AW Holdings and/or GTB Holdings, including, but not limited to, the residence at 1743 North Curson Avenue in Los Angeles, California, GTB Holdings, and the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California, or in the alternative, to damages for the equivalent of the sale proceeds of the residence, any encumbrance on the residence, and any sale or encumbrance on any property owned by SG & AW Holdings or GTB Holdings.

## COUNT VIII
## UNIFORM VOIDABLE TRANSACTIONS ACT
### Cal. Civil Code §§ 3439 *et seq.*
### Estate of Gregory Davis, Plaintiff,
### Melissa Davis, Plaintiff
### Serhat Gumrukcu, Defendant
### William Anderson Wittekind, Defendant
### SG & AW Holdings, LLC, Defendant
### GTB Holdings, LLC, Defendant

107. Mrs. Davis repeats paragraphs 1 - 78.

108. On December 22, 2021, GTB Holdings purchased the commercial building at 4142,

Plante & Hanley, P.C.

4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California and contributed $4,686,778.15 in "borrower funds" towards the purchase.

109. GTB Holdings' payment of $4,686,778.15 in "borrower funds" towards the purchase of the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California was an "asset" of Mr. Gumrukcu, who is a "debtor" of the Plaintiffs, his "creditors," whose "claim" arose no later than January 6, 2018.

110. GTB Holdings' payment of $4,686,778.15 in "borrower funds" towards the purchase of the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California was made with the intent to hinder, delay and/or defraud the Plaintiffs.

111. GTB Holdings' payment of $4,686,778.15 in "borrower funds" towards the purchase of the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California has hindered, delayed and/or defrauded the Plaintiffs.

112. The Plaintiffs are entitled to damages from all Defendants for the equivalent value of GTB Holdings' payment of $4,686,778.15 in "borrower funds" towards the purchase of the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California.

### COUNT IX
### UNIFORM VOIDABLE TRANSACTIONS ACT
Cal. Civil Code §§ 3439 *et seq.*
N.Y. Debt. & Cred. Law §§ 270 *et seq.*
Estate of Gregory Davis, Plaintiff,
Melissa Davis, Plaintiff
Serhat Gumrukcu, Defendant
William Anderson Wittekind, Defendant

113. Mrs. Davis repeats paragraphs 1 - 78.

Plante & Hanley, P.C.

114. The contents, including all stock certificates of Enochian Biosciences, held in the joint account at J. P. Morgan in New York by "William Anderson Wittekind & Serhat Gumrukcu as Joint Tenants with Rights of Survivorship and not as Tenants in Common," are "assets" of Mr. Gumrukcu, who is a "debtor" of the Plaintiffs, his "creditors," whose "claim" arose no later than January 6, 2018.

115. Since at least 2022, Mr. Wittekind has, with the possible assistance of, or at the possible direction of, Mr. Gumrukcu, attempted to take delivery of the contents of the joint account held by "William Anderson Wittekind & Serhat Gumrukcu as Joint Tenants with Rights of Survivorship and not as Tenants in Common" at J. P. Morgan in New York.

116. The Plaintiffs are entitled to an injunction to prevent Mr. Gumrukcu and Mr. Wittekind from withdrawing, taking delivery, selling or encumbering the contents of the joint account held by "William Anderson Wittekind & Serhat Gumrukcu as Joint Tenants with Rights of Survivorship and not as Tenants in Common" at J. P. Morgan in New York.

### COUNT X
### UNIFORM VOIDABLE TRANSACTIONS ACT
### Cal. Civil Code §§ 3439 *et seq.*
### Estate of Gregory Davis, Plaintiff,
### Melissa Davis, Plaintiff
### Serhat Gumrukcu, Defendant

117. Mrs. Davis repeats paragraphs 1 - 78.

118. The 253,493 shares of Enochian Biosciences stock that Mr. Gumrukcu sold on or about May 18, 2022, shortly before he was arrested for the murder of Mr. Davis, were "assets" of Mr. Gumrukcu, who is a "debtor" of the Plaintiffs, his "creditors," whose

Plante &
Hanley, P.C.

"claim" arose no later than January 6, 2018.

119. Mr. Gumrukcu's sale of 253,493 shares of Enochian Biosciences stock was a "transfer" under the UVTA.

120. Mr. Gumrukcu's sale of 253,493 shares of Enochian Biosciences stock was made with the intent to hinder, delay and/or defraud the Plaintiffs.

121. Mr. Gumrukcu's sale of 253,493 shares of Enochian Biosciences stock has hindered, delayed and/or defrauded the Plaintiffs.

122. The Plaintiffs are entitled to damages for the equivalent value of Mr. Gumrukcu's sale of 253,493 shares of Enochian Biosciences stock

WHEREFORE, the Estate of Gregory Davis and Melissa Davis seek:

A. judgment on counts I - IV in their favor and against Serhat Daniel Gumrukcu, together with full, fair, just and adequate compensation, costs, interest, attorneys' fees and such other relief as is just and proper;

B. judgment on Count V in their favor that Mr. Gumrukcu's withdrawal from SG & AW Holdings and the transfer of his membership shares and other interests back to the company is void or alternatively, judgment in their favor and against Mr. Gumrukcu, Mr. Wittekind and SG & AW Holdings for the value of Mr. Gumrukcu's fraudulent transfer of his interest in SG & AW Holdings, together with costs, interest, attorneys' fees and such other relief as is just and proper;

C. an injunction to prevent Mr. Gumrukcu, Mr. Wittekind and SG & AW Holdings from selling or encumbering SG & AW Holdings, as set forth in Count VI;

D. an injunction to prevent all Defendants from selling or encumbering any of the property owned by SG & AW Holdings and/or GTB Holdings, including, but not limited to, the residence at 1743 North Curson Avenue in Los Angeles, California, GTB Holdings, and the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California, or in the alternative, or alternatively, judgment in their favor and against all Defendants for damages against as set forth in Count VII.

E. judgment on Count VIII in their favor and against all defendants for the value of GTB Holdings' payment of $4,686,778.15 in "borrower funds" towards the purchase of the commercial building at 4142, 4144, 4146 and 4153 Lankershim Boulevard in Los Angeles, California, together with costs, interest, attorneys' fees and such other relief as is just and proper;

F. an injunction to prevent Mr. Gumrukcu and Mr. Wittekind from withdrawing, taking delivery, selling or encumbering the contents of the joint account at J. P. Morgan in New York, which is held by "William Anderson Wittekind & Serhat Gumrukcu as Joint Tenants with Rights of Survivorship and not as Tenants in Common," as set forth in Count IX; and

G. judgment on Count X in their favor and against Mr. Gumrukcu for the equivalent value of Mr. Gumrukcu's sale of 253,493 shares of Enochian Biosciences on or about May 18, 2022, together with full, fair, just and adequate compensation, costs, interest, attorneys' fees and such other relief as is just and proper.

**THE PLAINTIFFS SEEK THE IMPOSITION OF PUNITIVE DAMAGES.**

**THE PLAINTIFFS DEMAND TRIAL BY JURY.**

Dated: January 26, 2023

                THE ESTATE OF GREGORY DAVIS,
                Melissa Davis, Administrator, and
                MELISSA DAVIS, Individually

By: _____
                Michael F. Hanley
                Paul J. Perkins
                Plante & Hanley, P.C.
                Post Office Box 708
                White River Junction, VT 05001
                802-295-3151
                mfhanley@plantehanley.com
                pjperkins@plantehanley.com

                Andrew B. Delaney
                Stefan Ricci
                Martin Delaney & Ricci Law Group
                100 North Main Street
                Barre, VT 05641
                802-479-0568
                andrew@mdrvt.com
                stefan@mdrvt.com