UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| THE ESTATE OF GREGORY DAVIS, AND MELISSA DAVIS,<br>　　　　　　Plaintiffs,<br><br>　　　v.<br><br>SERHAT DANIEL GUMRUKCU, ET AL,<br>　　　　　　Defendant. | Docket No. 5:22-CV-00123 |

### DEFENDANT GUMRUKCU'S RESPONSE TO AMENDED PETITION FOR WRIT OF ATTACHMENT AND MEMORANDUM OF LAW

Defendant Serhat Gumrukcu, by and through his attorneys, Langrock Sperry & Wool, LLP, hereby responds in Opposition to Plaintiffs' Amended Petition for Writ of Attachment and Memorandum of Law.

Plaintiffs have been attempting – either directly or indirectly – to use their attachment of Gumrukcu's assets in order to encumber shares of Enochian Biosciences stock titled to Anderson Wittekind since fall 2022. First, on December 19, 2022 (six months after they obtained the attachment) Plaintiffs *denied* that it was their intent to attach Mr. Wittekind's shares: "[T]he attachment order is clear that it applies only to Mr. Gumrukcu's stock in Enochian Biosciences. It does not say or even imply that the attachment extends to Mr. Wittekind's stock or stock that Mr. Gumrukcu and Mr. Wittekind jointly own, if any." (Doc. 30, p.2). They nevertheless were content that J.P. Morgan had restrained Wittekind's shares, thereby effectively attaching them.

Plaintiffs then changed tacks and asserted on January 27, 2023 that this Court should "allow the New York Supreme Court to decide the matter of Mr. Wittekind's certificates in the joint account." (Doc. 44, p.8)

As recently as April 13, 2023, Plaintiffs sought an Order of Approval explicitly seizing Wittekind's property. Based on nothing other than the facts and affidavits provided in their Motions to Attach *Gumrukcu's* property (Docs. 3, 4 and 6) they proposed an order attaching "all of Defendant' Wittekind's shares" and "all of the defendants' certificates of stock in Enochian Biosciences, Inc., whether held in the name of Defendant Gumrukcu, Defendant Wittekind, or jointly." (Doc. 69, p.1-2).

Now, nearly a year after the initial attachment, Plaintiffs have yet another new theory. They reverse their earlier position that Vermont law applies to the attachment,[1] and now argue that shares owned by Wittekind are subject to attachment to satisfy Gumrukcu's debts under *California* law, and that they can therefore be attached with no further factual showing. (Docs. 74, 75) Notably, they do not argue likelihood of success against Wittekind or claim they are entitled to an attachment of Wittekind's assets to satisfy claims against Wittekind himself.

They also reverse their earlier position that "this Court does not have general or specific personal jurisdiction over J.P. Morgan … As a result, the Court cannot order J.P. Morgan to release the certificates in the joint account to Mr. Wittekind." (Doc 44 p.7). They now take the exact opposite position and propose that this Court order that "J.P. Morgan

---

[1] Plaintiffs have also suggested at times that New York law should govern the attachment of the shares. (Doc 44, p.6)

Securities LCC shall deliver to the Clerk of this Court" all of Gumrukcu's and Wittekind's stock certificates. (Doc 75 p.9)

Plaintiffs are incorrect as a matter of law and incorrect as a matter of procedure, and their effort to attach Wittekind's property should fail.

I.   Plaintiffs Still Have Not Complied with Vt.R.Civ.P. 4.1

It is a mystery why Plaintiffs, given a third opportunity to remedy their defective motions for attachment, persist in failing to comply with the well-known and straightforward procedure for seeking an attachment under Vermont law. "The motion shall … be supported by an affidavit or affidavits meeting the requirements set forth in subdivision (i) of this rule." Vt.R.Civ.P. 4.1(b)(2), Vt.R.Civ.P. 4.1(g). This procedure, along with the Defendants' entitlement to an evidentiary hearing on Plaintiffs motion at which the Plaintiffs bear the burden of proof, is an incident of due process that shields Defendants from arbitrary encumbrance of their assets. *Connecticut v. Doehr,* 501 U.S. 1, 111 S.Ct. 2105 (1991). It is not a complicated process and should not be difficult for Plaintiffs to comply with. However, Plaintiffs continue to do almost everything *but* submit affidavits and evidence to support their claims. The deficiency is especially glaring with respect to their efforts to attach property owned by Mr. Wittekind.

Plaintiffs' failure to comply with Rule 4.1 has permitted their ever-shifting theories of what property is subject to attachment and why, and has caused substantial confusion of the record, as described above.  The resulting procedural tangle has been costly to Defendants and to the judicial resources of the court. Having been given multiple opportunities to submit a filing that conforms with the law, Plaintiffs should not be rewarded for their failure to do so, and Defendants should not have to continue spending resources to defend against Plaintiffs'

defective filings. The Court should deny the Plaintiffs' Amended Petition for their failure to comply with Rule 4.1.

II.     Vermont Law Controls Which Property is Subject to Attachment

Because the case is pending in the District of Vermont, Vermont law supplies the applicable choice of law rule. "A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules." *Griffith v. White*, 929 F.Supp. 755, 756-757 (D.Vt. 1996). Vermont applies "the Restatement (Second) of Conflicts for choice-of-law questions in both tort and contract cases." *McKinnon v. F.H. Morgan & Co.*, 750 A.2d 1026, 1028 (Vt. 2000). Under this approach, Vermont examines and applies law of the jurisdiction that "has the most significant relationship to the occurrence and the parties." *Amiot v. Ames*, 166 Vt. 288, 292 (1997).

Plaintiffs go astray in their choice of law analysis when they jump to §257 of the Restatement (Second) of Conflicts of Laws, however, a rule that addresses interests of spouses with respect to *each other*, and particularly when they are not domiciled in the same jurisdiction.[2] The issue addressed by §257 is "whether as a result of the marriage one spouse acquires an interest in the movables then owned by the other spouse." The law that provides the answer is "usually that where the other spouse was domiciled at the time of the marriage." Restatement (Second) of Conflict of Laws §257 (1971).[3]  Plaintiffs misstate the rule of §257 as providing that "the law of the state that has the most significant contract [*sic*] with the

---

[2] Plaintiffs' current position that all property owned by Gumrukcu and Wittekind is community property under California law and therefore available to satisfy each one's individual creditors is a departure from their previous position that "as a matter of contract" "all stock certificates in the joint account are owned by Mr. Gumrukcu." (Doc. 44 p.4-5, 10)

[3] The rule "is of minor importance," and only "come[s] into play … in a situation involving marital property interests in the movables of a spouse domiciled in a foreign nation at the time of the marriage." Restatement (Second) of Conflict of Laws §257, Comment a.

4

defendants determines the effect of their marriage on their interest in property." This is simply not a correct statement of the rule.

Plaintiffs are also incorrect that California law applies to the question of whether Wittekind's interests in property are attachable in this matter. Even if California law were to apply in a dispute between Wittekind and Gumrukcu concerning division of their property, it does not supply the law governing whether a Vermont plaintiff may attach Wittekind's assets in an action pending in the District of Vermont concerning a tort alleged to have been committed in Vermont. It is Vermont that has the "most significant relationship to the occurrence and the parties," *see Amiot v. Ames*, 166 Vt. at 292, and therefore Vermont that provides the governing law in this matter under the principles set forth in Restatement (Second) of Conflict of Laws §6. *Cf.* Restatement (Second) of Conflict of Laws §222 ("General Principle" applicable to property is to apply the law of the state with most significant relationship to the thing and the parties under principles of §6). California, by contrast, has no connection with the facts of this case. The Plaintiffs have no relationship with California. Their interest as a potential creditor did not arise from a California transaction or from any expectation based on application of California law; they cannot claim any reliance on California law.

Moreover, Vermont's application of its own law to the attachment procedure under Fed.R.Civ.P. 64 extends to "determine[ing] what assets are 'subject to enforcement, and thus available to judgment creditors.'" *Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina")*, 313 F.3d 70, 83 (2d Cir. 2002) (applying forum state law to prejudgment attachment). Under Vermont law, property that is jointly held by a married couple is presumptively held as tenants by the entireties and is thus exempt from

attachment by a creditor of only one spouse. *Beacon Mill. Co., Inc. v. Larose*, 138 Vt. 457, 459-60 (1980); 6 Am. Jur. 2d Attachment and Garnishment § 75 ("Funds owned by a husband and wife as tenants by the entireties are beyond the reach of a creditor of either one of the tenants; such funds are immune from garnishment except where the debt was incurred by both spouses"). To the extent that the property sought by Plaintiffs is jointly held by Gumrukcu and Wittekind, none of it is available for attachment under Vermont law.

Alternatively, if all the stock were held by the couple as joint tenants, Plaintiffs would still be unable to attach all the shares held therein. "[O]nly a debtor's pro rata share of a joint account is subject to garnishment by that debtor's individual creditors." 6 Am. Jur. 2d Attachment and Garnishment § 7; *Barrup v. Barrup,* 2014 VT 116, ¶23 (applying rebuttable presumption that only fifty percent of assets held in joint account owned by two parties is available to third party creditor of one party); *Sea Salt, LLC v. Bellerose*, No. 2:18-CV-00413-JAW, 2018 WL 5499537, at *2 (D. Me. Oct. 29, 2018) "As a general rule the entire interest in real property held by joint tenants cannot be used to satisfy the judgment creditor of one joint tenant. A lien created by a judgment attaches only to the interest of the debtor joint tenant."). "Even where a joint account is vulnerable to the levy of a money judgment as against one joint tenant, such a levy is effective only as to the actual interest of that judgment debtor in the account." *Viggiano v. Viggiano*, 136 A.D.2d 630, 631, 523 N.Y.S.2d 874, 875 (N.Y. Ad.2 Dept 1988).

The Second Circuit provides that the forum state law governs the attachability of assets to satisfy a judgment by Plaintiffs. *Pertamina*, 313 F.3d at 83. Under Vermont law, at most 50% of Wittekind's and Gumrukcu's jointly-held assets are available to satisfy a debt of Gumrukcu.

III.  California Law Would Not Authorize Attachment of Wittekind's Property to Satisfy Gumrukcu's Debt

Even if the Court were to apply California law, it would not result in attachment of Wittekind's own property. The Plaintiffs rely on *In re Brace*, 9 Cal. 5th 902 (2020) to argue that the Enochian shares titled to Wittekind and Wittekind's interest in SG & AW Holdings, LLC are community property available for attachment by them as creditors of Gumrukcu alone. However, they omit critical limiting language in *In re Brace*, and in doing so read *In re Brace* to say more than it does.

The holding of *In re Brace* is succinctly stated as follows, in relevant part: "For *joint tenancy property acquired with community funds* on or after January 1, 1975, the property is presumptively community in character." *Id.* at p.938 (emphasis added). *Brace* further holds that such "community property" is available to the creditor of only one spouse. For *Brace's* community property presumption to apply, however, the property must have been "acquired with community funds." Plaintiffs have not attempted to show how Wittekind (or Gumrukcu for that matter) acquired their Enochian shares – in other words, they have not attempted to prove the necessary factual predicate that the shares were "acquired with community funds." They similarly have not attempted to prove that the shares in SG & AW, LLC were acquired with community funds. Finally, they have not attempted to show that the LLC interest was joint tenancy property at all.  As a result, the Plaintiffs cannot take advantage of the community property presumption set forth in *Brace*.

In any event, if this Court were to apply California law to the scope of the attachment here, it would be restricted by California's exclusion of the pre-judgment attachment remedy for tort claims. Under California law, pre-judgment attachment is only permissible in cases based on contract, Cal. Code. Civ. Proc. §483.010(a), and in actions against a natural person

7

is further limited only to actions "aris[ing] out of the conduct by the defendant of a trade, business or profession," *id.* §483.010(c).  Application of California law on pre-judgment attachments would therefore preclude any attachment at all in this wrongful death case.

IV.     Plaintiffs Have Not Cured Their Jurisdictional Hurdles

Because the attachment procedure available to this Court relies on Vermont law, this Court has no authority to attach property outside the State. "It is a fundamental rule that in attachment or garnishment proceedings the res must be within the jurisdiction of the court issuing the process." 6 Am. Jur. 2d Attachment & Garnishment §23. *See also Corporate Commission of Mille Lacs Bank of Ojibwe Indians v. Money Centers of America, Inc.*, 915 F.Supp.2d 1059, 1061 (D. Minn. 2013).

Plaintiffs seek attachment against non-resident defendants of stock issued by a Delaware corporation and held in an account in New York, and membership interests of a California limited liability company. Vermont law provides no avenue for attachment or execution of property outside the state.

CONCLUSION

This Court should deny Plaintiffs' Amended Petition for Writ of Attachment, or grant a limited and specific attachment as described above consistent with applicable law.

DATED at Burlington, Vermont this 22nd day of May, 2023.

LANGROCK SPERRY & WOOL, LLP



Lisa B. Shelkrot
210 College Street, Suite 400
Burlington, VT 05401
lshelkrot@langrock.com
Phone: (802) 864-0217

Attorneys for Defendant Serhat Daniel Gumrukcu

1970078.2