UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| THE ESTATE OF GREGORY DAVIS, ) <br> Melissa Davis, Administrator, and ) <br> MELISSA DAVIS, individually, ) <br>                  Plaintiffs, ) <br> ) <br>       v. ) <br> ) <br> SERHAT DANIEL GUMRUKCU, ) <br> WILLIAM ANDERSON WITTEKIND, ) <br> SG & AW HOLDINGS, LLC, and ) <br> GTB HOLDINGS, LLC, ) <br>                  Defendants. ) | Civil Case No. 5:22-cv-0123-gwc |

**PLAINTIFFS' REPLY TO DEFENDANTS' OBJECTIONS TO PLAINTIFFS' *AMENDED PETITION FOR WRIT OF ATTACHMENT***

**I.  Plaintiffs' Motions Are Supported by Affidavits**

Defendant Gumrukcu claims that the original motion for attachment and the amended motion for attachment are defective in that they are not supported by an affidavit. ("Plaintiffs continue to do almost everything but submit affidavits and evidence to support their claims.")[1]

Defendant Gumrukcu's statement is not true. The plaintiffs submitted four affidavits by Patrick Hanna, a Special Agent with the Federal Bureau of Investigation, in connection with their original motion for an *ex parte* writ of attachment.[2]

In these affidavits, Special Agent Hanna describes in great detail a complex plot, with Defendant Gumrukcu at the center, to murder Gregory Davis. Special Agent Hanna's affidavits

---

[1]  *Defendant Gumrukcu's Response to Amended Petition for Writ of Attachment and Memorandum*, Doc. 79, page 3.

[2]  Exhibit 1 to *Plaintiff's Petition for Ex Parte Prejudgment Writ of Attachment*, Doc. 6 - 1, pages 20 - 31, 33 - 37, 45 - 67, 74 - 95.

were sufficient to support an unchallenged ruling holding Defendant Gumrukcu without bail pending trial. The same affidavits, the authenticity of which cannot be denied, provide more than adequate evidence to support the conclusion that the plaintiffs are likely to succeed on their wrongful death, intentional infliction of emotional distress and other claims.

II. **Vermont Law Provides the Remedy, Attachment, but Vermont Law Requires this Court to Apply California Law When Determining What Property is Subject to Attachment**

All parties agree that this Court must act as a Vermont state court would act in connection with the plaintiffs' motions to attach the defendants' property. In addition, all parties agree that Vermont law both supplies the remedy, a writ of attachment, and supplies the applicable rules regarding choice of laws in the event of a conflict of laws. Moreover, all parties agree that Vermont follows the Restatement (Second) of Conflict of Laws (1971) in tort cases, such as this case. Finally, all parties agree that the defendants were married and domiciled in California when they acquired the property the plaintiffs seek to attach, stock in Enochian Biosciences and various interests in various California limited liability companies.

However, the parties disagree about what law determines which of the defendants' property is subject to attachment.

Although Vermont law provides the remedy, attachment, if there is a conflict between Vermont law and the law where the defendants resided when they acquired the property the plaintiffs seek to attach, Vermont law requires the court to follow the Restatement (Second) of Conflict of Laws (1971). Moreover, there is a conflict between law of Vermont, which does not recognize community property, and California, which does. As a result, the Court must follow the Restatement and, because the defendants resided in California at the time they acquired the

property the plaintiffs seek to attach, the Restatement requires the Court to follow California substantive law with respect to whether the defendants' property is subject to attachment.

Although, as noted above, Defendant Gumrukcu concedes that Vermont looks to the Restatement to resolve conflicts of laws, he asserts that Sections 257 and 259 of the Restatement only apply to disputes between spouses. However, Defendant Gumrukcu offers no support for this proposition, no such restriction appears within the language of the Restatement and, as will be discussed in a moment, the case law cited by the defendants is wholly at odds with the defendants' proposition.

Defendant Gumrukcu then asserts that Section 257 only applies to property acquired by a spouse before a marriage.

While it might be true that Section 257 of the Restatement only applies to property acquired by a spouse before marriage, there is no question but that Section 258 applies to property acquired by a spouse "during the term of the marriage." Section 258 expressly provides that the interests of a spouse in a movable acquired by the other spouse during the term of the marriage is determined by the local law of the state which has the most significant relationship to the spouses. It goes on to provide that when determining which state's law will control, "greater weight will usually be given to the state where the spouses were domiciled at the time the movable was acquired." Moreover, *comment b* to Section 258 provides that "except in rare circumstances" the law of the state where a married couple resides will control.

As just mentioned, all parties agree that the defendants resided in California at the time they acquired the property the plaintiffs seek to attach. California Family Code § 760 provides that "all property, real or personal, wherever situated acquired by a married person during the

marriage while domiciled in this state is community property" even if the title to the property is only in the name of one spouse.  In addition, California Family Code § 910(a) provides that "the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to the judgment or debt." As a result, because California substantive law determines the nature of the defendants' interest in the property the plaintiffs seek to attach, all of the defendants' community property, including both defendants interests in Enochian Biosciences and both defendants' interests in multiple California limited liability companies, are subject to attachment.

Defendant Wittenkind disagrees and cites Farmers Exch. Bank v. Metro Contracting Servs., Inc., 107 S.W.3d 381 (Mo. Ct. App. 2003) for the proposition that the law of the state which provides a remedy, in this case prejudgement attachment, also controls the nature of the defendants' interests in the property sought to be attached.[3]

Farmers simply does not say this.  In fact it holds to the contrary, and strongly supports the plaintiffs' assertion that what property of the defendants may be attached is controlled by the substantive law of the state where Mr. Gumrukcu and Mr. Wittekind resided when they acquired that property, California.

In Farmers, Harlan Russell asserted on appeal that a Missouri trial court had erred by failing to quash a prejudgment writ of attachment on a promissory note owed to him and his wife.  Since Mr. Russell's wife owed nothing to Farmers, the resolution of the issue depended on

---

[3] *William Anderson Wittekind's Objection to Plaintiffs' Petition for Amended Writ of Attachment*, Doc. 80, page 8.

whether Mr. and Ms. Russell owned the right to receive payments under the note as tenants by the entirety or as tenants in common. If the case was governed by Missouri law, Mr. Russell and his wife owned the note proceeds as tenants by the entirety, and the right to receive payments was not subject to attachment. On the other hand, if the case was governed by the law of Kansas, which does not recognize tenancy by entirety, the Russells owned the note proceeds as tenants in common, and the property was subject to attachment.

The Missouri court held that Missouri, like Vermont, follows the Restatement (Second) of the Conflict of Laws (1971). It went on to hold that even though Missouri provided Farmers's remedy, a writ of attachment, Section 258 of the Restatement provides that the law of the state where Mr. and Ms. Russell resided when they acquired the right to payments under the note determined whether they owned the property as tenants by the entirety or as tenants in common. The court then concluded that because Mr. and Ms. Russell were domiciled in Kansas at the time they acquired the right to receive payments under the note, Kansas law controlled. Since Kansas does not recognize tenancy by the entirety, the couple held the property as tenants in common and, as a result, it was subject to attachment.

Defendant Gumrukcu also disagrees with plaintiffs' analysis and cites Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Petamina"), 313 F.3d 70 (2d Cir. 2002) for the proposition that the Second Circuit applies "forum state law to prejudment attachment."[4]

This statement is less than candid. In Petamina, the plaintiff was attempting to execute

---

[4]   *Defendant Gumrukcu's Response to Amended Petition for Writ of Attachment and Memorandum*, Doc. 79, page 5.

on a judgment it had obtained against an oil company owned by the Republic of Indonesia. The issue was whether the plaintiffs could attach funds in an account at the Bank of America. Because the plaintiffs were seeking a post-judgment attachment, not a prejudment attachment, the proceedings were pursuant to Fed. R. Civ. P. 69(a) and not, as here, pursuant to Fed. R. Civ. P. 64(a). However, similar to Rule 64, Rule 69 provides that "[p]rocess to enforce the judgment for the payment of money shall be a writ of execution . . . . The procedure and execution . . . shall be in accordance with the practice and procedure of the state in which the district court is located . . . ." In a ruling strikingly similar to the ruling in Farmers, the Second Circuit held that while New York law provided the remedy, post-judgment attachment, New York choice of laws rules required the court to apply Indonesian law to determine who owned the funds at the Bank of America. ("[W]e are confident that Indonesian law would govern under the 'interest analysis' that would be applicable under New York choice of law rules.")[5] The Second Circuit then ruled that because "under Indonesian law, all of the disputed funds except for the Retention [a fee received by Pertamina] belong to the Republic of Indonesia,"[6] the district court acted properly when it granted the plaintiff's motion to attach "the Retention," and denied the plaintiffs' motion to attach the remainder of the disputed funds.

      The analysis used in both Farmers and Petamina is the analysis that should be used in this case. Although Vermont provides the remedy, a writ of attachment, because Mr. Gumrukcu and Mr. Wittenkind are married and resided in California at the time they acquired the property the plaintiffs seek to attach, California substantive law determines the nature of the defendants'

---

    [5]    Petamina, 313 F.3d 70, 87 (2d Cir. 2002).

    [6]    Id., 88.

interests in that property. Since the property the plaintiffs seek to attach is community property, and community property is subject to attachment for the debts of only one spouse, the plaintiffs' motion for an amended writ of attachment should be granted.

### III. Under Fed. R. Civ. P. 64, Vermont Procedural Law, Not California Procedural Law, Provides the Plaintiffs' Remedy, Attachment

Next, both defendants, after vigorously asserting that Vermont provides both the procedural and substantive law in this case, somewhat incongruously assert that a procedural statute in California, Cal. Code. Civ. Proc. § 483.010, bars attachments in tort cases and only allows attachments in actions "aris[ing] out of the conduct by the defendant of a trade, business or profession."

The defendants' argument is at odds with Rule 64, which provides that "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." This Court is located in Vermont. Attachment in tort actions is available under Vermont law. V. R. Civ. P. 64(a) provides that:

> In any action under these rules (except an action for malicious prosecution, libel, or slander), real estate, goods and chattels, and other property may, in the manner and to the extent provided by law and by this rule, be attached and held to satisfy any judgment for damages and costs which the plaintiff may recover.

### IV. This Court has the Authority to Attach Personal Property Outside Vermont

Finally, Defendant Gumrukcu asserts that "this Court has no authority to attach property outside the State."[7]

---

[7] *Defendant Gumrukcu's Response to Amended Petition for Writ of Attachment and Memorandum*, Doc. 79, page 8.

Again, this statement just isn't true. V. R. Civ. P. 64(a) contains no such limitation. On the contrary, the language of the rule is very broad and provides for the attachment of "real estate, goods and chattels, and other property." Moreover, where, as here, a court has personal jurisdiction over the parties, that court "has authority to 'freeze' property under its control, whether the property be within or without the United States." United States v. First Nat. City Bank, 379 U.S. 378, 384, 85 S. Ct. 528, 13 L. Ed. 2d 365 (1965); see also Green v. Drexler, 760 F.2d 406, 414 (2d Cir. 1985) (upholding district court's order that appellee transfer her property from outside the United States to an escrow account); United States v. Ross, 302 F.2d 831, 834 (2d Cir. 1962) ("Personal jurisdiction gave the court power to order [defendant] to transfer property whether that property was within or without the limits of the court's territorial jurisdiction.").

**V.      Conclusion**

This is not a case where it is a close call as to whether it is more likely than not that a defendant will be found liable for the wrongful death of a plaintiff. The evidence not only supports the conclusion that it is more likely than not the Defendant Gumrukcu will be found liable for Mr. Davis's wrongful death, the evidence supports a finding that there is overwhelming evidence that Serhat Gumrukcu orchestrated the pre-meditated murder of Gregory Davis.

Moreover, the plaintiffs seek nothing more than a provisional remedy, one subject to review and modification throughout the course of this litigation.[8]

---

[8] "At any time before entry of final judgment, defendant may move the Presiding Judge of the court in which the action is pending for an order modifying or discharging any attachment. After notice and hearing, the judge may modify the attachment . . . ." V. R. Civ. P. 4.1 (e)(2).

For the reasons stated in this memorandum, and for the reasons cited in the many other documents submitted by the plaintiffs in connection with their motions for attachment, the Court should issue the proposed writ, attach all Enochian Biosciences stock issued to Serhat Gumrukcu only, all such stock issued to William Anderson Wittekind only, and all such stock issued to both Mr. Gumrukcu and Mr. Wittekind.  In addition, the Court should attach all of Mr. Gumrukcu and Mr. Wittekind's interests in SG & AW Holdings and in GTB Holdings.  The attachment should be in the amount of $25 million, a very reasonable sum given the extraordinary facts of this case.

Dated: June 1, 2023

                THE ESTATE OF GREGORY DAVIS,
                Melissa Davis, Administrator, and
                MELISSA DAVIS, Individually

By: /s/ Michael F. Hanley
      Michael F. Hanley
      Paul J. Perkins
      Plante & Hanley, P.C.
      Post Office Box 708
      White River Junction, VT 05001
      802-295-3151
      mfhanley@plantehanley.com
      pjperkins@plantehanley.com

      Andrew B. Delaney
      Stefan Ricci
      Martin Delaney & Ricci Law Group
      100 North Main Street
      Barre, VT 05641
      802-479-0568
      andrew@mdrvt.com
      stefan@mdrvt.com