UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| THE ESTATE OF GREGORY DAVIS, )<br>Melissa Davis, Administrator and )<br>MELISSA DAVIS, individually, )<br>　　　　　　Plaintiffs, )<br>　)<br>v. )<br>　)<br>SERHAT DANIEL GUMRUKCU, )<br>　　　　　　Defendant. ) | Civil Case No.: 5:22-cv-0123 |

## WILLIAM ANDERSON WITTEKIND'S REQUEST FOR HEARING ON PLAINTIFFS' AMENDED PETITION FOR A WRIT OF ATTACHMENT

William Anderson Wittekind, through his attorneys, Sheehey Furlong & Behm P.C., states the following in light of Plaintiffs' Reply in Support of their Amended Petition for a Writ of Attachment. Given the extent to which Plaintiffs have clouded the waters in this case by raising ever-changing and incorrect legal arguments and factual assertions, Mr. Wittekind requests oral argument on the issues presented by Plaintiffs' Amended Petition and Reply and requests a Court order directing Plaintiffs to file a bond as security against wrongful attachment given the extreme financial prejudice suffered by Mr. Wittekind.

Among other legal errors, Plaintiffs have mischaracterized the holdings of the cases Mr. Wittekind cited in support of his position that **Vermont law** ultimately governs whether this property may be attached, as well as Mr. Wittekind's analysis of those cases.[1] Plaintiffs missed the critical holding of *Farmers Exch. Bank v. Metro Contracting Servs., Inc.*, 107 S.W.3d 381 (Mo. Ct. App. 2003): Namely, after the Missouri Court of Appeals determined that, under Missouri's conflict of law rules, Kansas law applied to the substantive question of how the

---

[1] Mr. Wittekind did not, contra to *Plaintiffs'* assertion, characterize *Farmers Exch. Bank* as holding "that the law of the state which provides a remedy…also controls the nature of the defendants' interests in the property sought to be attached."

husband and wife owned their property (and therefore that they owned it as tenants in common), the Court applied <u>Missouri</u> law on whether and to what extent tenancy in common property may be attached by the sole creditor of one spouse. *Id.* at 395 ("As we discussed, *supra*, the forum state, *in this case Missouri*, as a matter of procedure, controls which classifications of property are subject to attachment and execution. In that regard, it is well settled in this state that a judgment creditor, in satisfaction of the judgment debt, can attach the interest of a judgment debtor in personal property that the debtor holds as a tenant in common with a spouse.") (internal citations omitted) (emphasis added).

Plaintiffs similarly mischaracterize the holding of *Karaha Bodas Co. v. Pertamina*, 313 F.3d 70 (2d Cir. 2002), which, in fact, followed the same general approach as *Farmer's*. First, the Second Circuit determined there was no actual conflict between New York and Indonesian law on the substantive property rights question involved in sorting out the ownership of funds by the Indonesian state and a state-owned oil company (Pertamina). However, it assumed *arguendo* that on certain specific issues there might be a divergence and so applied Indonesian law to determine the respective ownership interests of these entities in funds held in trust in a New York bank. Yet the court explicitly stated that it would "apply New York law to determine what assets are subject to enforcement, and thus available to judgment creditors." *Id.* at 83. Concretely, this meant that the court, having determined that the oil company did not own a property interest in the bulk of the funds, but rather simply possessed them as a trustee would, applied *New York* law on the extent to which funds held by a trustee could be subject to attachment by the trustee's creditors. *Id.* at 92 (citing *Wulff v. Roseville Trust Co.*, 164 A.D. 399, 404–05, 149 N.Y.S. 683, 687 (1st Dep't 1914) ("Property which a debtor holds in trust for others ... is not subject to an attachment issued against his property.")). Similarly, having determined that Pertamina *did*

completely own the "retention" portion of the funds, the Court clearly applied New York and not Indonesian law in determining that the retention could be attached. *Id.* Plaintiffs acknowledge that "the analysis used in both Farmers and Petamina is the analysis that should be used in this case" (Reply at 6)—but the Court must apply the actual logic of those cases, not Plaintiffs' mischaracterization of it.

Plaintiffs also have failed to address Mr. Wittekind's other dispositive arguments. Their silence speaks volumes on the question of whether they waived their right to argue California law determines substantive property rights issues through the contrary positions they previously took and given the Court's April 6, 2023 order. Despite this Court's clear holding on April 6, 2023, "[i]f there is no claim against Mr. Wittekind, then there would be no basis for attaching his individually owned shares." *see* Court's Opinion and Order, Doc. 66 at 6-7, Plaintiffs still have failed to show a likelihood of success on any claim against Mr. Wittekind. The Court, in its April 6 order, indicated that the only available means of rebutting the presumption that *only* a debtor's pro-rata share of a joint account could be attached (thereby allowing attachment of the shares in Mr. Wittekind's name) would be for Plaintiffs to submit factual evidence rebutting the presumption of *Barrup v. Barrup* and/or to demonstrate why Plaintiffs' fraudulent transfer theory supported such attachment. April 6 Order, Doc. 66 at 14-15. *See* April 21 Order on Responses and Objections to Proposed Writ of Attachment, Doc. 72 (allowing Plaintiffs to explain why their claims against Mr. Wittekind as a defendant might justify attaching the sole property of Mr. Wittekind, as well as to address whether there was any basis to rebut the presumption of 50% of the jointly-titled shares being attachable). Plaintiffs ignored this Court's clear directive in their Amended Petition.

Separate from the issue of stocks in the joint account, Plaintiffs also needed to demonstrate how their fraudulent transfer allegations supported attachment of Mr. Wittekind's interests in SG&AW Holdings. Notably, Mr. Wittekind submitted with his opposition to the Amended Petition unchallenged evidence that the original corporate action to divest Mr. Gumrukcu of his interests in SG&AW was taken in 2020 and demonstrated why Plaintiffs' theory of a fraudulent transfer in 2020 fails. In light of these and other shortcomings of Plaintiffs' pleadings, the overall complexity of the issues, and the extreme and ongoing violations of his due process rights, Mr. Wittekind respectfully requests oral argument on Plaintiffs' Amended Petition at the Court's earliest convenience.

Mr. Wittekind also requests a Court order that Plaintiffs shall post a bond or other security for the damages caused by this wrongful attachment, on which Plaintiffs have failed to carry their burden for almost a year. Plaintiffs have recklessly ignored the procedural requirements of Vermont's attachment rule to Mr. Wittekind's extreme financial prejudice. In such circumstances, the Court is well within its equitable powers to order Plaintiffs to post a bond as security, even absent explicit statutory authorization. *Cf. Ohland v. Ohland*, 141 Vt. 34, 442 A.2d 1306 (1982) (allowing the filing of a bond in a family court action to guard against fear of unwarranted action by one party). The bond should be in an amount equivalent to the loss in value of Mr. Wittekind's stocks and his share of the jointly titled stocks. Taking November 25, 2022, the date Mr. Wittekind filed his motion to clarify the writ of the attachment as a starting point, the roughly 3.64 million shares of stock have declined in price from $1.75 per share to $0.69 price per share as of June 12, 2023, for a total loss of $3.86 million. Should the Court grant Plaintiffs' Amended Petition in whole or in part and attach either Mr. Wittekind's stocks or his membership interests in SG&AW Holdings, the bond must be sufficient to compensate Mr.

Wittekind for the complete loss in value of this property, again taking November 25, 2022 as the starting date on which value is to be determined.

DATED at Burlington, Vermont this 12th day of June 2023.

**WILLIAM ANDERSON WITTEKIND**

by: */s/Heather E. Ross*
SHEEHEY FURLONG & BEHM P.C.
Heather E. Ross, Esq.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
hross@sheeheyvt.com

## CERTIFICATE OF SERVICE

I, Heather E. Ross, counsel for William Anderson Wittekind, do hereby certify that on June 12, 2023, I caused to be filed with the Clerk of Court the following document using the CM/ECF system:

## WILLIAM ANDERSON WITTEKIND'S REQUEST FOR HEARING ON PLAINTIFFS' AMENDED PETITION FOR A WRIT OF ATTACHMENT

The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Andrew B. Delaney, Esq.
andrew@mdrvt.com

Michael F. Hanley, Esq.
mfhanley@plantehanley.com

Paul J. Perkins, Esq.
pjperkins@plantehanley.com
Stefan Ricci, Esq.
stefan@mdrvt.com

Lisa B. Shelkrot, Esq.
lshelkrot@langrock.com

DATED at Burlington, Vermont this 12th day of June 2023.

**WILLIAM ANDERSON WITTEKIND**

by:   */s/Heather E. Ross*
SHEEHEY FURLONG & BEHM P.C.
Heather E. Ross, Esq.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
hross@sheeheyvt.com