UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2023 OCT 27  AM 10: 37

BY _____

| | |
|---|---|
| THE ESTATE OF GREGORY DAVIS, ) | |
| Melissa Davis, Administrator, and ) | |
| MELISSA DAVIS, individually, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 5:22-cv-123 |
| ) | |
| SERHAT DANIEL GUMRUKCU, ) | |
| WILLIAM ANDERSON WITTEKIND, ) | |
| SG & AW HOLDINGS, LLC, and GTB ) | |
| HOLDINGS, LLC, ) | |
| ) | |
|     Defendants. ) | |

**OPINION AND ORDER ON MOTION FOR ENTRY OF PROPOSED ORDER
REGARDING WRIT OF ATTACHMENT
(Doc. 92)**

This wrongful-death case arises out of the kidnapping and murder of Gregory Davis on

January 6, 2018, in or near Danville, Vermont. As described in more detail below, criminal

charges are pending. Meanwhile in this civil case, the parties have been litigating questions of

prejudgment attachment of assets belonging to Dr. Gumrukcu and to his spouse, William

Anderson Wittekind. Mr. Wittekind has prepared a proposed order on that topic (Doc. 92-1) and

has filed a motion requesting that the court issue the proposed order (Doc. 92). Plaintiffs oppose

the motion. (Doc. 93.)

**Facts**

On May 19, 2022, a grand jury sitting in the District of Vermont returned an indictment

against Serhat Gumrukcu and Berk Eratay charging them with conspiracy to use interstate

facilities in the commission of murder-for-hire in violation of 18 U.S.C. § 1958. Indictment,

*United States v. Gumrukcu*, No. 5:22-cr-58 (D. Vt. May 19, 2022), ECF No. 1. The Government

also charged Jerry Banks, the shooter, with kidnapping and Aaron Lee Ethridge, a middleman, with conspiracy to kidnap in violation of 18 U.S.C. § 1201. Superseding Information, *United States v. Banks*, No. 5:22-cr-58-3 (D. Vt. June 8, 2023), ECF No. 94; Indictment, *United States v. Ethridge*, No. 5:22-cr-42 (D. Vt. Apr. 14, 2022), ECF No. 1. Mr. Banks has pled guilty to three counts of murder-for-hire, conspiracy, and money laundering. Change-of-Plea Hearing, *United States v. Banks*, No. 5:22-cr-58-3 (D. Vt. June 9, 2023), ECF No. 98. Mr. Ethridge has pled guilty to kidnapping and conspiracy. Change-of-Plea Hearing, *United States v. Ethridge*, No. 5:22-cr-42 (D. Vt. July 22, 2022), ECF No. 22.

Dr. Gumrukcu and Mr. Eratay have pled not guilty. A trial is scheduled in October 2024.

Plaintiffs in this civil case are Mr. Davis's estate and Mr. Davis's widow, Melissa Davis. Ms. Davis filed suit against Dr. Gumrukcu on June 21, 2022. In the original complaint, she alleges that "[t]he death of Mr. Davis was caused by intentional acts of Mr. Gumrukcu constituting murder." (Doc. 1 ¶ 47.)

Plaintiffs amended their complaint in April 2023 to add additional causes of action related to the original wrongful death claim (survival; loss of consortium; and intentional infliction of emotional distress) and an entirely new group of claims of fraudulent conveyance under the California Uniform Voidable Transactions Act, Cal. Civil Code §§ 3439 et seq. (Doc. 68.) Counts V–X name Dr. Gumrukcu's spouse William Wittekind as well as two California limited liability corporations holding title to an office building and the marital residence.

Plaintiffs filed a motion to attach the personal property of Serhat Gumrukcu when they filed their complaint. (Doc. 3.) The motion seeks the delivery of "25 million dollars in the stock of Enochian Biosciences, Inc. . . . to the Clerk of the Court." (*Id.* at 1.) As its name suggests,

2

Enochian Biosciences, Inc. ("Enochian") is a company involved in research concerning the "development of pharmaceutical and biological products for the human treatment of HIV, HBV, influenza and coronavirus infections, and cancer." (Doc. 3-2 at 10.) The original attachment motion alleged that Dr. Gumrukcu owned shares in Enochian valued at $100 million, subject to the market loss likely to follow the pre-trial detention of the company's principal "inventor." (Doc. 3 at 5.)

In a second motion filed a week later, Plaintiffs sought to attach "Mr. Gumrukcu's interests in Holding Co. #1 and Holding Co. #2 up to $7,193,000, the amount of equity both companies have in real property in Los Angeles, California." (Doc. 4 at 2.)

The court denied both motions because they failed to comply with the requirements for ex parte attachment under Vermont law. (Doc. 5.) Following refiling (Doc. 7), the court granted the motion and issued an order of approval ordering Dr. Gumrukcu to "immediately deliver all of his stock certificates in Enochian BioSciences, Inc. to the Clerk of this Court" and attaching Dr. Gumrukcu's interest in the two California LLCs in the amount of $7,193,000. (Doc. 11 at 3.) The court clerk then issued a writ of attachment. (Doc. 12.)

Dr. Gumrukcu—detained since May 24, 2022, on the criminal case—was served in jail on July 26, 2022. (Doc. 16.) He filed a motion for an extension of time to answer the complaint and to respond to the attachment motion, which the court granted, extending the time to respond to October 25, 2022. (Docs. 17, 19.) On that date, Dr. Gumrukcu sought an additional six-month extension that the court allowed but for 30 days only. (Docs. 20, 26.)

Unknown to the federal court, Mr. Wittekind had opposed the attachment in a separate lawsuit he filed in New York Supreme Court. That court rejected his claim for relief, writing on August 30, 2022, that "[p]laintiff [Wittekind's] motion seeks a mandatory preliminary injunction

that would alter the status quo and which would amount to the ultimate relief sought in this action . . . . Plaintiff has not proffered a valid basis for such extraordinary relief." (Doc. 44-11.)

Dr. Gumrukcu has never directly opposed the motion for attachment against property he owns in his own name—principally the stock shares. On January 3, 2023, he filed a response stating that he objects to the attachment and reserves the right to dissolve, modify or discharge the writ in the future. He notes that the Enochian stock certificates are not in his possession and "are currently held in a brokerage account with J.P. Morgan Securities, LLC." (Doc. 32.) It has fallen principally to Mr. Wittekind to oppose the attachment of property he owns solely or as marital property in California.

On November 25, 2022, Mr. Wittekind filed an emergency motion to intervene for the limited purpose of moving to clarify the writ of attachment. (Doc. 23.) Plaintiffs filed an assent to the motion to intervene, and the court has granted that motion. (Docs. 40, 66.)

On December 9, 2022, the court received a filing from the two real estate holding companies (SG & AW Holdings LLC and GTB Holdings LLC). In a brief filing, counsel for both companies and Mr. Wittekind stated that "[s]ince 2020, the sole member and owner of SG & AW Holdings has been William Anderson Wittekind. See Exhibit 1. SG & AW Holdings LLC, in turn, is the sole member and owner for GTB Holdings. See Exhibit 2." (Doc. 28.) Exhibit 1 is the operating agreement for GTB Holdings, LLC. It identifies SG & AW Holdings, LLC as its sole member. (Doc. 28-1.) Exhibit 2 is an action by unanimous written consent dated January 10, 2020. It purports to document the withdrawal of Dr. Gumrukcu as a member of SG & AW Holdings LLC. (Doc. 28-2.)

On the face of these documents, it would appear that Mr. Wittekind was the sole beneficial owner of the two parcels of real estate—the home and the office building—two years

4

after the murder and more than two years before Dr. Gumrukcu's indictment. Plaintiffs
responded with the representation that metadata attached to the document demonstrated that it
was not signed by electronic means by Mr. Wittekind until August 15, 2022. (Doc. 30 at 4.)

Faced with this observation, counsel for the two LLCs provided a statement that the
original action removing Dr. Gumrukcu from his position as a member was taken in March 2020
but the document was lost. "In August 2022, the documents were signed when the originals
could not be located." (Doc. 33 at 2.) Counsel provided a redacted letter from a California law
firm stating that "although Serhat Gumrukcu was a member of the Company [SG & AW
Holdings, LLC] upon formation [in 2018], he resigned from membership in the Company in
early 2020." (Doc. 33-2.)

On January 26, 2023, Plaintiffs moved to amend the complaint to add the fraudulent
transfer claims under California law. (Doc. 38.) The exhibits to the amended complaint include
a "property status agreement" executed by Mr. Wittekind and Dr. Gumrukcu on June 29, 2022—
six weeks after Dr. Gumrukcu's arrest—that states that each spouse is the sole owner of the
shares in Enochian issued to him. (Doc. 38-10.)

Following a series of filings related primarily to the attachment issue (Docs. 44, 49, 50,
59, 60, 61–63), the court held a hearing on March 16, 2023 (Doc. 65 (transcript)). On April 6,
2023, the court entered an order granting the motion to amend, approving the writ of attachment
against property solely owned by Dr. Gumrukcu. (Doc. 66.) The court ruled that the limited
evidence before it was enough to support a determination that the Plaintiffs had met their burden
of demonstrating a reasonable likelihood of success on the fraudulent transfer claim and,
therefore, established a basis for pre-judgment attachment of Mr. Wittekind's shares and interest
in the two LLCs. The court relied on evidence that Mr. Wittekind and Dr. Gumrukcu had back-

dated the unanimous consent and signed the property status agreement after Dr. Gumrukcu's arrest.

Plaintiffs' submission of a proposed writ of attachment has reignited the controversy. Because the original motion was filed before the amended complaint, Mr. Wittekind argued that "Plaintiffs must file a motion for a writ of attachment supported by affidavits and/or a verified complaint and notice of such a motion and opportunity to be heard must then be afforded to Mr. Wittekind." (Doc. 71 at 2.) The court agreed and scheduled a second hearing on Plaintiffs' amended petition for September 14, 2023. (Doc. 90.) Following the hearing, Mr. Wittekind through counsel filed a motion seeking to limit any attachment to the shares owned solely by Dr. Gumrukcu and 50% of the shares held jointly. (Doc. 92.)

One more development deserves mention. The value of the Enochian shares has risen sharply. The company has renamed itself Renovaro Biosciences Inc. The shares now trade at close to $4.00 per share, making Dr. Gumrukcu's individual stake of approximately 12.8 million shares worth—at least on paper—about 50 million dollars. Market Data, *The Wall Street Journal*, https://www.wsj.com/market-data/quotes/RENB (last visited October 18, 2023) [https://perma.cc/2ANH-ZETG]. [1]

## ANALYSIS

Rule 64 of the Federal Rules of Civil Procedure governs the remedy of pre-judgment attachment. The rule adopts the remedies available "under the law of the state where the court is located" unless a federal statute applies. Fed. R. Civ. P. 64(a). In this case, the court follows

---

[1] The share price is volatile. As of October 27, 2023, it has fallen to $2.78 per share. That price results in a valuation on paper of the 12.8 million shares held by Dr. Gumrucku at $ 35,584,000. Renovaro BioSciences Inc. | Stock Info (enochianbio.com)(last checked October 27, 2023).

6

Vermont law in applying V.R.C.P. 4.1 as the legal standard for issuance of an order of approval

for a writ of attachment.

Attachment after a hearing—as here—requires a "finding by the court that there is a

reasonable likelihood that the plaintiff will recover judgment, including interest and costs in an

amount [equal or exceeding other security.]" V.R.C.P. 4.1(b)(2). The burden is on the plaintiff

to demonstrate a reasonable likelihood of prevailing at trial. *Ruggieri-Lam v. Oliver Block, LLC*,

120 F. Supp. 3d 400, 405 (D. Vt. 2015). The Rule 4.1 Reporter's Notes describe the necessary

finding as "a realistic conclusion by the court on the basis of affidavits and other evidence

presented at the hearing as to the actual probability of recovery by the plaintiff." V.R.C.P. 4.1

reporter's note to 1973 amendment.

Dr. Gumrukcu has not challenged the plaintiffs' claim that there is a reasonable

likelihood that they will recover judgment against him. He has reserved the right to seek an

order vacating or modifying any attachment in the future. The plaintiffs have relied on the

federal indictment and the affidavits submitted by federal law enforcement in support of search

warrant requests as the basis for her claim. In light of Dr. Gumrukcu's decision not to oppose

the attachment motion at this time, the court finds that the plaintiffs have met their burden of

demonstrating a reasonable likelihood of success. There is no suggestion that insurance is

available to respond to the claim. For these reasons, the court will issue an order of approval for

the attachment of the Enochian shares issued to Dr. Gumrukcu and now held in the J.P. Morgan

account.

Plaintiffs also seek an attachment of community property held by Dr. Gumrukcu and Mr.

Wittekind. Plaintiffs allege that this property includes 89,000 shares of Enochian stock held in

the names of both spouses, 3.6 million shares held in Mr. Wittekind's name, and equity in a

7

Case 5:22-cv-00123-gwc   Document 94   Filed 10/27/23   Page 8 of 9

residence and an office building in Los Angeles held by SG & AW Holdings, LLC and GTB Holdings, LLC. SG & AW Holdings holds title to the commercial building. It is also the sole owner of GTB Holdings, LLC. Plaintiffs have amended their complaint to seek a ruling from the court that Dr. Gumrucku's disclaimer of any interest in the two limited liability corporations is void under the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439-349.11 ("CUVTA").

Neither defendant objects at this time to the attachment of the shares held solely in the name of Dr. Gumrucku in the J.P. Morgan account. They deny that the disclaimer of Dr. Gumrucku's interest in the SG & AW Holdings is voidable under the CUVTA and seek to limit any attachment of marital property to 50 percent under Vermont law. *See Barrup v. Barrup*, 2014 VT 116, ¶ 23, 198 Vt. 25, 111 A.3d 414 (recognizing rebuttable presumption under Vermont law that only a debtor's pro rata share of a joint account is subject to garnishment by debtor's individual creditors).

The only claims for monetary compensation for Mr. Davis's death are against Dr. Gumrucku. There is no such claim against Mr. Wittekind. Plaintiffs have estimated the maximum value of their claim to be $25,000,000. The principal asset at issue is the Enochian stock with a current value in excess of that amount. V.R.Civ.P. 4.1(b)(2) authorizes the state courts to issue a writ of attachment upon "a finding by the court that there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment...". In this case, the defendants have not opposed the plaintiffs' position that they are likely to recover damages in an amount up to $25 million. In the absence of a dispute, the court accepts plaintiffs' estimate of the likely judgment for purposes of attachment.

8

An attachment against the 13.8 Enochian shares is sufficient to provide security for plaintiffs' claim. Rule 4.1 does not authorize the attachment of assets in excess of the claimed amount. For this reason, the court will not issue an order of approval for other property which may be subject to attachment for Dr. Gumrucku's obligations. These include the 89,000 jointly held shares, the Enochian shares held in Mr. Wittekind's name only, and the defendants' equity in the California real estate held by the two limited liability corporations.    If the attachment ordered by the court declines in value, plaintiffs are free to return to court to renew their allegations that these other assets may also be attached. As matters stand today, however, plaintiffs are fully secured through the attachment of the 13.8 Enochian shares held in Dr. Gumrucku's name.

## CONCLUSION

The court GRANTS defendant Wittekind's motion for entry of an order of approval (Doc. 92).

Dated at Rutland, in the District of Vermont, this 27 day of October, 2023.

Geoffrey W. Crawford, Chief Judge
United States District Court

9