UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| THE ESTATE OF GREGORY DAVIS, )<br>Melissa Davis, Administrator and )<br>MELISSA DAVIS, individually, )<br>                Plaintiffs, )<br>)<br>   v. )<br>)<br>SERHAT DANIEL GUMRUKCU, )<br>                Defendant. ) | Civil Case No.: 5:22-cv-0123 |

## WILLIAM ANDERSON WITTEKIND'S, SG&AW HOLDINGS' AND GTB HOLDINGS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

William Anderson Wittekind, SG&AW Holdings, LLC and GTB Holdings, LLC by and through their attorneys, Sheehey Furlong & Behm P.C., move to dismiss Plaintiffs' Amended Complaint on the grounds that the Court has no personal jurisdiction over these defendants. Vermont law governs personal jurisdiction in this diversity case, and Vermont law is clear that contesting an attachment of one's property is not grounds for establishing personal jurisdiction. Furthermore, in addition to there being no personal jurisdiction over these defendants, the counts naming Mr. Wittekind and the LLCs fail to state a claim upon which relief can be granted. None of them are debtors of Plaintiffs and, thus, Plaintiffs cannot state a claim against them under the Uniform Voidable Transactions Act, Cal. Civil Code § 3439. Moreover, Mr. Gumrukcu is a separate legal entity from the LLCs, and all real and personal property of the LLCs belong to the LLCs and not to any individual members of the LLCs. For these reasons, Plaintiffs' Amended Complaint against Mr. Wittekind and the LLCs must be dismissed.

## FACTUAL BACKGROUND

On April 13, 2023, Plaintiffs filed an Amended Complaint, which includes five Counts against Mr. Wittekind and/or the LLCs as well as Mr. Gumrukcu. *See* Counts V through IX of

the Amended Complaint. Count V is against Mr. Gumrukcu, Mr. Wittekind and SG&AW Holdings, LLC and alleges that Mr. Gumrukcu fraudulently withdrew his membership from SG&AW Holdings, LLC in March 2020 with the intent to hinder or prevent Plaintiffs' right to recover damages against him. Am. Compl. ¶ 93. Count VI makes the same assertions but argues that SG&AW Holdings, LLC is an "asset" of Mr. Gumrukcu's and seeks injunctive relief to prevent the sale of the Los Angeles home purchased in February 2021, an asset of SG&AW Holdings LLC. *See* Am. Compl. ¶ 98. Count VII adds GTB Holdings, LLC which was formed in 2021 by SG&AW Holdings LLC and purchased the Lankershim building in December 2021, to seek injunctive relief to prevent its sale, which as Plaintiffs know, happened before their Amended Complaint was filed. Count VIII attempts to assert a claim against GTB Holdings, LLC for its purchase of the Lankershim building, claiming that the purchase money of the LLC is an "asset" of Mr. Gumrukcu's. Am. Compl. ¶ 109. Finally, in Count IX, Plaintiffs seeks injunctive relief against Mr. Wittekind and Mr. Gumrucku regarding the contents of the J.P. Morgan account on the grounds that Mr. Wittekind has sought the return of his stock certificates from such account since 2022. These claims should be dismissed as discussed more fully below.

## DISCUSSION

**A. Personal Jurisdiction Is Determined By Vermont Law, Which Prohibits Personal Jurisdiction from Attaching Through One's Appearance For Purposes Of Contesting An *Ex Parte* Attachment Order.**

On July 6, 2022, following Plaintiffs filing of a wrongful death action against Serhat Gumrukcu, Plaintiffs filed *ex parte* prejudgment motions for attachment of certain assets. (Doc. 6). The next day, the Court granted Plaintiffs' *ex parte* prejudgment motions and issued a possessory writ of attachment for "all of [Mr. Gumrukcu's] Enochian BioSciences, Inc. stock" and a non-possessory writ of attachment for "[Mr. Gumrukcu's] interest in SG&AW Holdings,

LLC and in GTB Holdings, LLC, both California limited liability companies." (Docs. 11, 12 and 13). Some of Mr. Gumrukcu's Enochian BioSciences, Inc. stock was held in a New York account jointly held with his spouse, Mr. Wittekind, at J.P. Morgan. In addition to paper stock certificates solely in the name of Mr. Gumrukcu, as well as paper stock certificates in both of their names, that account also held paper certificates solely in Mr. Wittekind's name in the amount of 3.6 million shares. J.P. Morgan refused to release the paper certificates solely in Mr. Wittekind's name to him based on this Court's issuance of a possessory writ of attachment, absent a clarification from this Court that the writ of attachment was not intended to apply to paper certificates solely in Mr. Wittekind's name. Consequently, Mr. Wittekind made a limited appearance solely for the purpose of obtaining such clarification.

In the absence of a federal statute, Vermont law supplies the criteria for the remedy of prejudgment attachment. Fed. R. Civ. P. 64(a). The rule of attachment in Vermont states that "on two days notice to the plaintiff or on such shorter notice as court may prescribe, a defendant whose property has been attached upon an order of approval issued ex parte. . .may appear and move the judge who ordered issuance of the writ for an order dissolving, modifying, or discharging the attachment. ***Such appearance shall not submit the person of the defendant to the jurisdiction of the court.***" V.R.C.P. 4.1(e)(1) (emphasis added). Here, Mr. Wittekind, who was being deprived of his property in violation of his constitutional rights as set forth in *Fuentes v. Shevin*, 407 U.S. 67 (1972), intervened for the limited purpose of seeking clarity of the Court's order citing V.R.C.P. 4.1(e)(1). (Docs. 23, 24 and 27). *See Fuentes*, 407 U.S. at 84-85 ("It is now well-settled that a temporary non-final deprivation is nonetheless a deprivation in terms of the Fourteenth Amendment."); *see also* Reporter's Notes to V.R.C.P. 4.1 (noting that the

procedures put in place for contesting the prejudgment e*x parte* seizure of one's property are for the purposes of satisfying constitutional due process requirements as set forth *Fuentes*).

The amenability of a defendant to personal jurisdiction is governed by state law. *See, e.g.*, *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) ("In diversity cases arising in this Circuit, personal jurisdiction is determined by the law of the state in which the district court sits."); *Intermeat, Inc. v. American Poultry, Inc.*, 575 F.2d 1017, 1020 (2d Cir. 1978). Plaintiffs brought this case in federal court pursuant to diversity jurisdiction, *see* Am. Compl. ¶ 9, and, thus, Vermont law applies to the personal jurisdiction question. Under Vermont law, appearing to challenge or modify an attachment order does not subject anyone, even a defendant, to the Court's personal jurisdiction. V.R.C.P. 4.1(e)(1). Accordingly, Mr. Wittekind's limited intervention for purpose of challenging the possessory attachment of his personal property does not confer personal jurisdiction over him on this Court.

Because the attachment against them was not possessory and, therefore, did not involve any deprivation of their assets, SG&AW Holdings, LLC and GTB Holdings, LLC only provided the Court and the Plaintiffs with notice that Mr. Gumrukcu had no interest in these LLCs. However, even if they, too, had intervened for the limited purpose of contesting the attachment, Vermont law prohibits such an exercise from conferring personal jurisdiction on that basis. For these reasons, the Court must dismiss the Amended Complaint against Mr. Anderson and the LLCs for lack of personal jurisdiction.

B. **The Court Does Not Have Personal Jurisdiction Over These Defendants On Any Other Basis.**

A Vermont court may assert jurisdiction over a non-resident only where "there are 'certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Dall v. Kaylor*, 163 Vt. 274, 275,

658 A.2d 78, 79 (1995) (quoting *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945). Personal jurisdiction may be either general or specific.

Specific personal jurisdiction may attach to a non-resident defendant only where it has "purposefully directed ... activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Fox v. Fox*, 2014 VT 100, ¶ 27, 197 Vt. 466 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). General jurisdiction, meanwhile, only attaches to a corporation whose "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum state." *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)). "Except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).

Plaintiffs have not alleged facts in their Amended Complaint that would sustain either general or specific personal jurisdiction over Mr. Wittekind or the LLCs. None of these defendants are involved in the murder-for-hire scheme that forms the basis of the Complaint, nor are there any allegations in the Amended Complaint, nor could there be, that they are debtors of Plaintiffs, which is required to state a claim against them under Uniform Voidable Transactions Act, Cal. Civ. Code § 3439. upon which Plaintiffs rely. As Plaintiffs concede, with the exception of Mr. Wittekind seeking the return of his own stock certificates, it is Mr. Gumrukcu who took actions in March 2020 that they claim were for the purposes of defrauding them of their right to recover damages against him.

Mr. Wittekind and the LLCs did not take any action to become involved with residents of Vermont or direct any action towards residents of this State. This stands in stark contrast to *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). There, two Florida reporters were accused of making libelous statements about a California entertainer in the National Enquirer. They knew that the National Enquirer's largest circulation was in California and intended for their reports to be read there. Thus, they deliberately directed allegedly tortious conduct to the forum state of California. Here, there is no evidence that these defendants even knew of Mr. Gumrukcu's interactions with someone from Vermont until he was arrested on May 24, 2022, let alone that they intentionally directed actions towards residents of Vermont themselves.

C. **Even If This Court Had Personal Jurisdiction Over Mr. Wittekind Or The LLCs, The Counts Against Them Most Be Dismissed Because They Fail To State A Claim Upon Which Relief Can Be Granted.**

1. Counts V Through IX Must Be Dismissed Because Mr. Wittekind And the LLCs Are Not Debtors Of Plaintiffs.

In Counts V through VIII, Plaintiffs bring causes of action against Mr. Wittekind and the LLCs based on the Uniform Voidable Transactions Act ("UVTA"). Plaintiffs' claims must be dismissed against Mr. Wittekind and the LLCs because Plaintiffs cannot establish the elements of the UVTA. The UVTA provides, in relevant part: "A transfer made. . .by a debtor is voidable as to a creditor. . . if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor or without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."[1] Cal. Civ. Code § 3439.04. A "debtor" means a person who is liable on a claim. *Id.* §

---

[1] Notably, at the time Mr. Gumrucku made the transfer in March 2020, he was also nowhere near the point of insolvency. To the contrary, at the time of the transfer, Mr. Gumrukcu by all accounts had substantial assets that outweighed Plaintiffs' claimed damages in this case. Indeed,

3439.01(e).  Simply put, Mr. Wittekind and the LLCs are not debtors to Plaintiffs and, therefore, Plaintiffs cannot state a claim against them under the UVTA.  The counts against them under the UVTA must be dismissed for failure to state a claim.

    2.   <u>The Assets of The LLCs Are Not Mr. Gumrukcu's Personal Assets And, Therefore, The Court Has No Ability to Restrict The Sale Of Those Assets.</u>

Furthermore, Plaintiffs claims about which "assets" belong to Mr. Gumrukcu, the only debtor, fly in the face of well-established corporate law.  Plaintiffs seek to bring a claim against GTB Holdings, LLC alleging that its purchase of the Lankershim building was in violation of the UVTA.  Am. Compl. ¶ 109.  Plaintiffs also ask this Court to prevent encumbrances on all real and personal property of the two holding companies.  *See id.* ¶¶ 105, 112.  Of course, GTB Holdings is not a debtor to Plaintiffs and so the claim against it fails on that basis.  Furthermore, the assets and liabilities of an LLC are not the personal assets or liabilities of individual members.  Ordinarily, a corporation is considered a separate legal entity, distinct from its stockholders, officers, and directors with separate and distinct legal obligations.  *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538, 269 Cal.Rptr.3d 626 (2000).  The same is true of a limited liability company.  *Swart Enterprises, Inc. v. Franchise Tax Bd.*, 7 Cal. App. 5th 497, 510, 212 Cal.Rptr.3d 670 (2017).

As is well established in corporate law, all real and personal property of the holding companies belongs to the holding companies and not to any individual members of the LLCs.  1 Ribstein and Keatinge on Ltd. Liab. Cos. § 8:2 (2022); 1 Fletcher Cyc. Corp. § 31 (2022); *In re Hewitt*, 576 B.R. 790, 796 (Bankr. D. Vt. 2017) (citing 11 V.S.A. § 4031).  The assets of the

---

in March 2020, when Mr. Gumrukcu made the transfer of his membership interest back to SG&AW Holdings, far from being on the verge of insolvency and unable to pay his debts, Mr. Gumrukcu's 12.8 million shares of Enochian Biosciences stock alone were worth $46.59 million.

LLCs are not Mr. Gumrukcu's personal assets. *Denevi v. LGCC, LLC*, 121 Cal. App. 4th 1211, 1214 n. 1, 18 Cal. Rptr. 3d 276 (2004). Flowing from this principle is the corollary that members in a limited liability company have limited liability for the company's debts and obligations, and members have no direct interest in the company's specific property. *Id.*; *see also* Cal. Corp. Code § 17703.04. Thus, to the extent Plaintiffs also claim that the Court should enjoin Mr. Wittekind or the LLCs from disposing of the LLC assets under the UVTA, these claims also fail because the assets of the LLCs are not Mr. Gumrukcu's personal assets. Only assets belonging to the debtor can be restrained under the UVTA. On a separate ground, Plaintiffs' claim for a prohibition against the sale of the Lankershim building is moot because that building was sold before Plaintiffs even filed their Amended Complaint.

    3.   <u>Count IX Also Fails Because It Does Not Allege Any Fraudulent Transfer.</u>

In addition to failing to state a claim against Mr. Wittekind because he is not a debtor under the UVTA, Plaintiffs fail to state a claim in Count IX because they do not allege that any fraudulent transfers have taken place regarding Mr. Gumrukcu's paper stock certificates in the J.P. Morgan account. "In order for a fraudulent transfer to occur, among other things, there must be a *transfer* of an *asset* as defined in the [Act]." *Fidelity Nat'l Title Ins. Co. v. Schroeder*, 179 Cal. App. 4th 834, 841, 101 Cal. Rptr. 3d 854, 858 (2009) (citing Cal. Civ. Code § 3439.04) (emphasis in original). Boiled down to its essence, they allege that Mr. Wittekind has tried to access his own separate personal property in the form of Enochian BioSciences stock certificates in his name, not those in the name of Mr. Gumrukcu. *See* Am. Compl. ¶ 115. The Enochian BioSciences stock certificates in Mr. Gumrukcu's name are still attached by this Court. Therefore, any allegation that Mr. Gumrucku, the only debtor, will attempt to transfer paper stock certificates in his name to Mr. Wittekind is not ripe. While this Court may take actions

4927-1878-7169, v. 5

against Mr. Gumrucku, against whom it has personal jurisdiction, or his assets, it simply cannot sustain claims under the UVTA against those who are not debtors of Plaintiffs or against assets that do not belong to Mr. Gumrucku, even if the hurdle of personal jurisdiction could be overcome. For these reasons, all counts against Mr. Wittekind and the LLCs must be dismissed for failure to state a claim.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Amended Complaint against Mr. Wittekind, SG&AW Holdings, LLC, and GTB Holdings, LLC should be dismissed with prejudice. This Court does not have personal jurisdiction over Mr. Wittekind or the holding companies. Furthermore, even if personal jurisdiction could be established, Plaintiffs fail to state a claim upon which relief can be granted against these defendants.

DATED at Burlington, Vermont this 20th day of August 2025.

**WILLIAM ANDERSON WITTEKIND
AND SG&AW HOLDINGS, LLC,
AND GTB HOLDINGS, LLC**

by:   */s/Heather E. Ross*
**SHEEHEY FURLONG & BEHM P.C.**
Heather E. Ross
30 Main Street, 6th Floor
PO Box 66
Burlington, VT 05402-0066
(802) 864-9891
hross@sheeheyvt.com

4927-1878-7169, v. 5